UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>SALVADOR TAPIA-BALTAZAR; AND JOSE ARMANDO MATAMOROS MEZA-MERCADO,<br><br>                    Defendants. | Case No. 4:25-cr-00091-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Jose Meza-Mercado's Motion to Suppress (Dkt. 28) and Defendant Salvador Tapia-Baltazar's Joinder (Dkt. 30).[1] The Government filed its Response (Dkt. 29) and no reply brief was filed. An evidentiary hearing was held on November 7, 2025. Dkt. 34. Upon review, and for the reasons set forth below, the court DENIES Meza-Mercado's Motion.

## II. BACKGROUND

On July 19, 2024, Detective Oscar Rosales of the Idaho Falls Police Department received information from a reliable confidential informant about a Hispanic male willing to sell methamphetamine. The next day, Rosales contacted the number provided to him and

---

[1] At oral argument, the Government objected to Defendant Tapia Baltazar's joinder on standing grounds. Because the Court is denying the Motion to Suppress today, it need not address the Government's objection. However, as noted at oral argument, this standing principle is currently before the Court in another case and will be addressed more fully in that decision.

spoke by phone (in Spanish) with an unidentified male who said he would receive a methamphetamine shipment on July 21, 2024. The male agreed to sell Rosales five pounds of methamphetamine at $2,400 per pound, for a total of $12,000, and arranged to meet Rosales in Pocatello. He stated that "workers" would deliver the drugs and would later contact Rosales with details. Dkt. 29 at 2.

On July 21, 2024, Rosales received a call from a new number, later identified as belonging to Salvador Tapia-Baltazar, who said he was driving a black Mazda with a black Honda sedan following. Tapia-Baltazar indicated where he and Rosales would meet and asked Rosales to get into his vehicle to inspect the product before completing the deal. Rosales coordinated with Idaho State Police Detective Olsen, advising that two black vehicles were traveling northbound on Interstate I-15 to deliver five pounds of methamphetamine at a McCammon gas station around 5:00 p.m.

Surveillance units, including Homeland Security Special Agent Tyler Hatch, observed two black vehicles traveling together northbound on Interstate 15 below the speed limit, consistent with information Rosales received from Tapia-Baltazar. Both cars had no front license plates and were registered to Provo, Utah, residents. Because the gas station was busy, troopers decided to stop both vehicles near milepost 46 on I-15. The purpose of the stop was: 1) the lack of a front license plate in violation of Idaho code and 2) the ongoing drug investigation. Idaho State Trooper Nishon Neal stopped the black Honda (driven by Jose Armando Matamoros Meza-Mercado), and Trooper Cody Horan stopped the black Mazda. Neither vehicle's occupants spoke English.

Officer Bestor, an Idaho Falls Police canine handler who was on scene, conducted

a free-air sniff with his canine, Rip. Rip alerted to both vehicles. A subsequent search revealed a vacuum-sealed bag containing a white crystalline substance—later identified as methamphetamine—hidden inside an appliance box in the Honda's trunk. In the Mazda, detectives recovered the phone used to contact Rosales—which officers confirmed by calling the number from Rosales's phone and observing Rosales's number on the screen of the recovered phone.

Both drivers were arrested. Officers found cash in various denominations on the occupants, consistent with drug sales. After being advised of his *Miranda* rights, Defendant Meza-Mercado admitted awareness of the deal and said he had received the methamphetamine from an unnamed source.

On March 25, 2025, a grand jury indicted Tapia-Baltazar and Meza-Mercado for: (1) Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and (2) Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Dkt. 2.

On June 20, 2025, Meza-Mercado filed a Motion to Suppress challenging the legality of the stop under the Fourth Amendment. *See generally* Dkt. 28. Tapia-Baltazar joined in the motion. Dkt. 30.

### III. LEGAL STANDARD

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Mapp v. Ohio*, 367 U.S. 643 (1961). Generally, searches and seizures conducted without a warrant are "*per se* unreasonable under the Fourth Amendment" subject to "a few specifically

established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (cleaned up).

Relevant here, one exception to the warrant requirement is a stop or seizure for a traffic violation. *Rodriquez v. United States,* 575 U.S. 348, 354 (2015). Such a seizure is only justified if the officer diligently pursues the purpose of the stop; any deviations or delays for unrelated investigations violate the driver's Fourth Amendment right, unless supported by independent reasonable suspicion. *Id*. at 354–55. Similar to a *Terry* stop, law enforcement only needs reasonable suspicion that a crime has occurred to conduct an investigatory stop or seizure. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 499 U.S. 411, 417–18 (1981)). Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000).

The reasonable suspicion standard is "not a particularly high threshold to reach" but "a mere hunch is insufficient." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). In determining whether reasonable suspicion exists, the underlying facts are considered in their totality and in light of the officer's experience. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

MEMORANDUM DECISION AND ORDER - 4

If no warrantless search exceptions apply, evidence must be suppressed because evidence that the government obtains in violation of the Fourth Amendment is generally excluded from the prosecution of the alleged violator. *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963). Further, evidence discovered through "exploitation of" an illegal search or seizure, must also be suppressed as "fruit of the poisonous tree." *Id.* at 488.

## IV. ANALYSIS

### A.  Troopers Horan and Neal Had Reasonable Suspicion for the Stop and There was no Mistake of Law

Meza-Mercado argues Troopers Horan and Neal lacked reasonable suspicion to initiate the traffic stop in this case because the stop was based on a "false notion of illegality"—specifically, the absence of a second license plate on the Honda. Dkt. 28-1, at 4. Arguing there was no illegality about the vehicles, Meza-Mercado contends the license plate situation was used as an unlawful pretext to justify the stop. Meza-Mercado takes his argument one step further contending Troopers Horan and Neal failed to ascertain whether vehicles registered in Utah were subject to the same dual-plate requirements as those in Idaho.

Similar to a *Terry* stop, law enforcement only need a reasonable suspicion that a crime has occurred to conduct an investigatory stop or seizure. *Lopez-Soto*, 205 F.3d at 1104. 1104. "Reasonable suspicion is defined as a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cotterman*, 709 F.3d at 968 (cleaned up).

Officers Horan and Neal had reasonable suspicion to initiate a traffic stop in this

MEMORANDUM DECISION AND ORDER - 5

situation because it is a violation of Idaho Code Section 49-428 to not have a front license plate on a car "if the vehicle is equipped with a front licenses plate mountain bracket." The Troopers' uncertainty regarding whether either vehicle lacked a front mounting bracket amounts, at most, to a mistake of fact and does not negate the stop. *See United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002) ("[A] mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot.")

Here, the objective facts known to Troopers Horan and Neal at the time were sufficient to establish reasonable suspicion that either/both vehicles were potentially committing a misdemeanor violation by not having a front license plate displayed.

In like manner, the applicability, if any, of Utah law in this case is questionable at best because the Utah law Meza-Mercado relies upon did not go into effect until January 1, 2025, long after the events in question. *See* Utah code 13-48-103. Thus, even considering Utah law, there was no mistake here because at the time of the stop, Utah still required a front and back plate.[2]

In sum, the Troopers here had reasonable suspicion to stop the vehicles, and their decision did not rest on a mistake of law. Accordingly, they did not violate the Fourth Amendment.

---

[2] That the Governor of Utah signed this law on March 14, 2024—prior to the stop in this case—is irrelevant because the statute itself outlines the effective date as January 1, 2025. And the newspaper article submitted by Meza-Mercado—if even considered—does not change the efficacy of the law. The Court will not belabor the point, but this argument borders on frivolous. The law does not support Meza-Mercado's position. Moreover, a newspaper article is insufficient to establish any fact or interpretation of law.

MEMORANDUM DECISION AND ORDER - 6

**B. The Collective Knowledge Doctrine**

In addition to the reasonable suspicion Troopers Horan and Neal had for the stop based upon a violation of Idaho code, they also had collective knowledge of an ongoing drug investigation. In order for the collective knowledge doctrine to apply, the Court must determine whether the investigatory search complied with the Fourth Amendment by looking to the "collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (citing *United States v. Sutton,* 794 F.2d 1415, 1426 (9th Cir.1986) brackets in original)). When an officer with direct knowledge of facts giving rise to a reasonable suspicion of criminal activity orders another officer not involved in the investigation to conduct a traffic stop, search, or arrest, the collective knowledge doctrine is satisfied. *Ramirez*, 473 F.3d at 1031. Importantly, the collective knowledge doctrine has no requirement regarding the content of what must be shared, only that the officer with personal knowledge of facts giving rise to a reasonable suspicion communicates an appropriate order to another officer to conduct a stop, search, or arrest. *Id.*

Meza-Mercado did not seriously dispute—in briefing or at oral argument—that the collective knowledge doctrine applies in this case and justified the traffic stop. Thus, only a brief analysis is necessary.

In *Ramirez*, the Defendants (including Ramirez) came to law enforcement's attention while law enforcement was conducting surveillance regarding drug trafficking at

MEMORANDUM DECISION AND ORDER - 7

a residence. 473 F.3d at 1028. One of the surveillance officers issued a request over the radio for a uniformed officer to initiate a traffic stop. *Id.* at 1029. The surveillance officers did this because they did not want to make contact with the Defendants themselves and jeopardize the ongoing drug investigation. *Id.* A traffic stop was initiated, a search ensued, drugs were found, and the Defendants were subsequently indicted. *Id.* at 1030. Ramirez filed a Motion to Suppress alleging, among other things, that the officer who pulled him over (for a lane violation) lacked personal knowledge of the facts giving rise to the automobile search (based on the drug suspicion). *Id.* The Government relied on the collective knowledge doctrine in opposing Ramirez's motion. *Id.* The District Court found that the search was supported by the collective knowledge of all officers involved and denied the Motion to Suppress. *Id.* The Ninth Circuit affirmed noting that:

> [T]he collective knowledge doctrine includes no requirement regarding the *content* of the communication that one officer must make to another. Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.

*Ramirez*, 473 F.3d at 1037.

Here, Idaho Falls Police detectives were conducting an ongoing narcotics investigation. Detective Rosales arranged to purchase methamphetamine from a Hispanic male, later identified as Tapia-Baltazar. During communications, Tapia-Baltazar indicated he would be traveling in a black Mazda accompanied by another vehicle, a black Honda, and that the transaction would occur at a McCammon gas station at approximately 5:00

p.m.

Detective Rosales relayed this information to Detective Olsen, including that the drugs were being transported in two black vehicles with Utah plates. Detectives and troopers established surveillance near the designated gas station. As the vehicles approached, Special Agent Hatch observed two black vehicles traveling under the speed limit and in tandem, corroborating the details Rosales had received. When Detective Rosales spoke by phone with Tapia-Baltazar, Special Agent Hatch observed that the Mazda's driver was simultaneously on the phone—further confirming identification of the suspects.

Detective Olsen then informed Troopers Horan and Neal that two northbound black vehicles were transporting approximately five pounds of methamphetamine. Acting on Olsen's direction, the Troopers positioned themselves near milepost 46 and initiated a traffic stop once the vehicles passed exit 44.

Before the stop, Detective Rosales possessed specific and articulable facts establishing reasonable suspicion of drug trafficking. That information was communicated through Detective Olsen to Troopers Horan and Neal. Thus, the stop was supported by the collective knowledge of law enforcement, and the troopers properly relied on the reasonable suspicion established by Detective Rosales. See *Ramirez*, 473 F.3d at 1032–33.

Because multiple law enforcement officers and agencies had collective knowledge of an ongoing drug investigation, shared that information with each other, and acted on that information, sufficient probable cause existed to stop Meza-Mercado and Tapia-Baltazar and no Fourth Amendment violation occurred here.

MEMORANDUM DECISION AND ORDER - 9

## V. CONCLUSION

Troopers Horan and Neal did not violate the Fourth Amendment. They had reasonable suspicion to initiate a traffic stop based on a violation of Idaho Code. Furthermore, they had collective knowledge of the ongoing drug investigation which provided a second, and independent, reasonable suspicion to stop the vehicles in question. The stop, search, and resulting evidence seized will not be suppressed.

## VI. ORDER

**IT IS HEREBY ORDERED:**

1. Meza-Mercado's Motion to Suppress (Dkt. 28) is DENIED.

DATED: November 20, 2025

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 10